# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

RODNEY ROTHERT,       )
                                   )
     Defendant/Appellant,      )
                                   )
         v.                  )
                                   )     Case No.   10-cv-1055
RICHARD E. BARBER, *Trustee*,   )
                                   )
     Plaintiff/Appellee.       )
                                   )
                                   )

# O R D E R   &   O P I N I O N

Before the Court is a Bankruptcy Appeal filed by Appellant Rodney Rothert, appealing Bankruptcy Judge William V. Altenberger's January 20, 2010 decision finding that a transfer made by Debtor Patriot Seed, Inc., to Appellant was a voidable preference pursuant to 11 U.S.C. § 547. For the following reasons, the Bankruptcy Court's decision is AFFIRMED.

## FACTUAL BACKGROUND

The basic facts underlying this proceeding are not disputed, and are taken from Judge Altenberger's Opinion.[1] Prior to filing Bankruptcy, the Debtor was in the business of producing seed corn and seed beans for sale to farmers for planting. With respect to the seed beans, the Debtor had a contract to produce "Round Up Ready" soybean seed with Monsanto Chemical Company, the holder of the patent.

---

[1] The facts are largely taken directly from Judge Altenberger's Opinion, which can be found at *In re Patriot, Inc.*, 2010 WL 381620 (Bankr. C.D. Ill. Jan. 20, 2010). The Court has omitted facts which are not relevant to the instant appeal. Where a fact is taken from somewhere other than the Bankruptcy Court's opinion, this will be noted.

The Debtor in turn contracted with Appellant Rothert and various other farmers[2] ("the Growers") to grow the seed beans for sale to the Debtor, who in turn would sell the seed beans to other farmers for production of soybean crops. Appellant Rothert had contracted to grow seed beans with Debtor from 1997 until 2002.

Prior to the 2002 crop year, the procedure the Debtor and the Growers utilized was as follows. In the fall of the year preceding the applicable crop year, or early into the crop year, the Growers would purchase from the Debtor the soybean seed from which to grow the new seed beans. In the spring of the crop year, the Debtor and the Growers would enter into a contract for the growing of the seed beans for that crop year. In the fall of the crop year, as the seed beans were harvested, the Growers would have them weighed and delivered to Debtor's facility, where they were stored in segregated bins and tested. After performing the tests, the Debtor would send each individual Grower a letter indicating whether the seed beans met prescribed standards. If they did, the seed beans could be priced by the Grower and purchased by the Debtor. If the Grower priced his seed beans on or before the first of May, the contract would provide that payment was to be made within seven days after the first Monday in May. If the seed beans were priced after the first of May, then payment would be made within ten business days after the price was established. The Debtor would finance the payments to the Growers by a line of credit from Lincoln State Bank.

The procedure for the 2002 crop year, which is the crop year giving rise to this litigation, was different. The difference arose because Debtor switched its

---

[2] Many of these other farmers were defendants in the Bankruptcy Court proceedings, however Appellant Rothert is the only defendant to have appealed.

financing from the Lincoln State Bank to the John Deere Farm Plan Credit Program ("Farm Plan"). On May 16, 2003, Debtor sent the Growers a letter advising them of the switch and that the date of payment would be extended to an estimated date of June 10th, along with 1% interest "to compensate for the delay in payment." The Debtor held a meeting at a local hotel to discuss the delayed payment issue with its growers. None of the Growers, including Appellant Rothert, opposed the delay in payment, nor did they try to recover the seed beans or sue for the contract price. Checks were issued on or after June 9, 2003. Specifically, Debtor paid Appellant on June 9, 2003 and June 26, 2003, in the amounts of $155,959.75 and $4,151.84, ("June 2003 payments") respectively. (Doc. 5 at 13). Debtor also paid Appellant $1,559.60 on June 9, 2003 for 1% interest from May 12, 2003 until June 9, 2003. (Doc. 5 at 13).[3]

## PROCEDURAL HISTORY

On September 4, 2003, Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On March 16, 2004, the case was converted to one under Chapter 7, and Richard Barber was appointed as the Chapter 7 Trustee for the case. The Trustee commenced the instant adversary proceeding against Appellant Rothert and eight other Growers ("Defendant Growers") pursuant to § 547(b) of the Bankruptcy Code, alleging that the delayed 2003 payments were recoverable as preferences. In response, the Defendant Growers denied the existence of a preference and raised affirmative defenses under § 547(c), namely that the delayed payments were a contemporaneous exchange for new value or that

---

[3] Appellant does not appeal the Bankruptcy Court's finding that the payment of 1% interest was a voidable preference.

they were conducted in the ordinary course of business. *See* 11 U.S.C. §§ 547(b) and (c). Bankruptcy Judge Altenberger found that the payments were, in fact, preferential transfers pursuant to 11 U.S.C. § 547(b), and that the Defendant Growers failed to carry their burden of proof in demonstrating that they were either a contemporaneous exchange for new value pursuant to § 547(c)(1), or that they were made in the ordinary course of business pursuant to § 547(c)(2). *In re Patriot Seeds, Inc.*, 2010 WL 381620 (Bankr. C.D. Ill. Jan. 20, 2010). Accordingly, Judge Altenberger ordered that the money paid to the Defendant Growers in June of 2003 be paid back to the Trustee, in addition to pre-judgment interest at a rate of 4.43%. *Id.*

Only Appellant Rothert's appeal of the Bankruptcy Court's decision is before the Court at this time. Appellant is not appealing the Bankruptcy Court's determination that the June 2003 payments qualified as preferential transfers under § 547(b), or that they were not a contemporaneous exchange for new value under § 547(c)(1). (Doc. 5 at 5-6). Instead, the only issues on appeal are whether the Bankruptcy Judge erred in his determination that the June 2003 payments from Debtor to Appellant Rothert did not fall under the "ordinary course of business exception" found in § 547(c)(2), and whether the Bankruptcy Judge erred in awarding Plaintiff pre-judgment interest. (Doc. 5 at 5-6).

## STANDARD OF REVIEW

This Court has jurisdiction to review the decision of the Bankruptcy Judge pursuant to 28 U.S.C. § 158(a). District courts are to apply a dual standard of review when considering a bankruptcy appeal. The findings of fact of the

Bankruptcy Judge are reviewed for clear error, while the conclusions of law are reviewed de novo. *In re Yonikus*, 996 F.2d 866, 868 (7th Cir. 1993); *In re Ebbler Furniture and Appliances, Inc.*, 804 F.2d 87, 89 (7th Cir. 1986); *see also*, Bankruptcy Rule 8013 (West 1995). A finding of fact is "clearly erroneous" when the reviewing court is left with the definite and firm conviction that a mistake has been made. *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985).

<h2 style="text-align:center">DISCUSSION</h2>

As previously mentioned, the only issues on appeal are the applicability of § 547(c)(2), the "ordinary course of business" exception, to the payments made by Debtor to Appellant in June of 2003, and, if that provision is indeed not applicable, whether Debtor is entitled to pre-judgment interest on the amount of the claimed preference payment. The Court will first examine Appellant's arguments with regards to the applicability of § 547(c)(2) to this case, and then turn to the Bankruptcy Judge's determination of pre-judgment interest.

## I. Applicability of § 547(c)(2)

Some background on the general policy behind the law of preferential transfers may be helpful to give context to this case. Section 547(b) of the Bankruptcy Code provides that a trustee may recover "any transfer of an interest of the debtor in property" if five conditions are met.[4] One of the purposes of this provision is to prevent the debtor, during his slide toward bankruptcy, from trying to stave off the evil day by giving preferential treatment to his most importunate (i.e. urgent or persistent) creditors, who may sometimes be those who have been

---

[4] Appellant does not dispute on appeal that all of those conditions have been met here. (Doc. 5).

waiting longest to be paid. *In re Tolona Pizza Prod., Corp.*, 3 F.3d 1029, 1032 (7th Cir. 1993). If this provision was not in effect, the mass of debtor's creditors may become nervous and attempt to recover their assets from the debtor all at once, which would lead to the debtor being forced into bankruptcy earlier than is socially desirable. *See id.* As the goal then is to allow the debtor to continue to operate its business under some semblance of normalcy, § 547(c) is meant to encourage normal credit transactions and the continuation of short term credit dealings. *In re Globe Mfg. Corp.*, 567 F.3d 1291, 1297 (11th Cir. 2009). Otherwise, §547(b) would have the ironic effect of actually hastening the debtor's bankruptcy, as no creditor would do business with the debtor for fear of losing their payment once bankruptcy was filed. Accordingly, the ordinary course of business exception enables the struggling debtor to continue operating its business.

Still, in order for an otherwise preferential payment to qualify for the exception, the party who received the payment must prove that this type of transaction was not unusual, that is, that it took place in the ordinary course of its business with the debtor. *See Union Bank v. Wolas*, 502 U.W. 151, 160 (1991). Pursuant to § 547(c)(2), the transfer is non-avoidable if it was:

> (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
>
> (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
>
> (C) made according to ordinary business terms.

11 U.S.C. § 547(c)(2).[5]  The burden of proof rests with the Appellant to show that all three elements of § 547(c)(2) have been met.  11 U.S.C. § 547(g).  If any of the three elements are not met, the exception is inapplicable and the preferential payment may be avoided.  *See In re Hansen Lumber Co. of Galesburg, Inc.*, 280 B.R. 273, 277 (Bankr. C.D. Ill. 2001).

Here, it is not disputed that the Appellant met the first element, that is, that the debt was incurred by Debtor in the ordinary course of its business with the Appellant.  *In re Patriot*, 2010 WL 381620, at *10; (Doc. 7 at 6).  However, Bankruptcy Judge Altenberger also determined that Appellant had not met its burden of proof as to both the second and third elements, and that therefore the ordinary business exception did not apply.  *Id.* at *10-26.  Central to Appellant's appeal is the Bankruptcy Judge's decision that these elements were not satisfied.

Whether a party has established an ordinary course of business defense is a mixed question of law and fact.  "The standards created to define and interpret the phrase 'ordinary course of business' involve questions of law;" however what transpired between the parties both in the ordinary course of their business relationship and in the transactions at issue is a question of fact.  *In re Nat'l Steel Corp.*, 351 B.R. 906, 913 (N.D. Ill. 2006) (*quoting Martino v. First Nat'l Bank of Harvey (In re Garofalo's Finer Foods)*, 186 B.R. 414, 421 (N.D. Ill. 1995)).

---

[5] 11 U.S.C. § 547(c)(2) was modified as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.  However, because this case was filed prior to the effective date of the amendments, the controlling statute is the pre-amendment version of § 547(c)(2).  Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 2005 Stat. 256 ("the amendments made by this Act shall not apply with respect to cases commenced under title 11, United States Code, before the effective date of this Act.").

### A. § 547(c)(2)(B):  Ordinary Course of Business of the Debtor and Appellant

The second element of the "ordinary course of business" exception is that the transfer was "made in the ordinary course of business . . . of the debtor and transferee."  § 547(c)(2)(B).  Courts have interpreted the "ordinary course of business" requirement to be subjective in nature insofar as it requires a consideration of whether the transfer was ordinary in relationship to the other dealings between the particular debtor and creditor at issue.  *In re Globe*, 567 F.3d 1291, 1298 (11th Cir. 2009); *see also In re Tolona*, 3 F.3d at 1032 ("the most important thing is not that the dealings between the debtor and the allegedly favored creditor conform to some industry norm but that they conform to the norm established by the debtor and the creditor in the period before, preferably well before, the preference period.").

In making this determination, the Seventh Circuit has indicated that the following non-exhaustive list of factors should be considered: "1) the length of time the parties were engaged in the transaction at issue; 2) whether the amount or form of tender differed from past practices; 3) whether the debtor or creditor engaged in any unusual collection or payment activity; and 4) whether the creditor took advantage of the debtor's deteriorating financial condition."  *Kleven v. Household Bank F.S.B.*, 334 F.3d 638, 642 (7th Cir. 2003).  Other courts also consider the timing of the payments, although this may arguably be subsumed by the third listed factor, i.e. whether the payment activity was unusual in this circumstance.[6]

---

[6] Appellant makes this argument in its Brief.  (Doc. 5 at 21).  The Court finds that whether the timing of payments is a separate factor or not is irrelevant, as it is

*See In re Globe*, 567 F.3d at 1298; *In re Hansen Lumber*, 270 B.R. at 277. Untimely payments are more likely to be considered outside of the ordinary course of business and therefore voidable as preferences. *In re Globe Mfg. Corp.*, 567 F.3d 1291, 1298 (11th Cir. 2009).

Here, the Bankruptcy Judge determined that the June 2003 payments made by Debtor to Appellant were not ordinary in relation to their previous dealings. *In re Patriot*, 2010 WL 381620, at *14. The Bankruptcy Judge considered testimony from both the Trustee's expert, Roger Stone, and the Appellant's expert, Gary Murphey and determined that the 2003 payments different significantly from previous years. *Id.* Judge Altenberger made this conclusion based upon the facts that these payments were late and were coupled with 1% interest, which was unlike previous years in which Debtor made the majority of its payments on time. *Id.* Appellant argues that the Bankruptcy Judge's determination was in error for several reasons, which the Court will consider one at a time.

### 1. Past Transaction History

First, Appellant argues that because the transaction history between Appellant Rothert and Debtor was of limited duration, the Bankruptcy Judge needed to look at Debtor's previous transaction history with all of its Growers. (Doc. 5 at 26-27). Further, Appellant argues that based upon this expanded transaction history, there was evidence that Debtor had made late payments in the past, and that therefore the June 2003 payment to Appellant was not unusual. (Doc. 5 at 27-28). According to Appellant, the Bankruptcy Judge required

---

clear that it is often considered by courts in analyzing the ordinary course of business between a debtor and creditor.

"substantial similarity" rather than "unusualness" and therefore he also erred as a matter of law, allowing for *de novo* review. (Doc. 5 at 28-29).

The Court disagrees for several reasons. First, as acknowledged by the Appellant, the Bankruptcy Judge did look at Debtor's past transaction history with all Growers, not just Appellant. However, he also considered whether the payments made – to all Growers, not just Appellant – were unusual. The Bankruptcy Judge determined that although there had been some late payments in the past, the majority of Growers were typically paid on time; however in 2003, 95%, including Appellant Rothert, were paid late. *In re Patriot*, 2010 WL 381620, at *14. He concluded, "[t]he across the board late payments to the Defendants coupled with the 1% interest payment take the transactions outside the realm of the ordinary course of the parties previous business dealings, wherein late payment by the Debtor was the exception rather than the rule." *Id.* What transpired between the parties both in the ordinary course of their business and the transaction at issue is a question of fact, which the Court reviews based upon a clearly erroneous standard of review. *See In re Nat'l Steel Corp.*, 351 B.R. 906, 913 (N.D. Ill. 2006). Based upon the evidence on the record, the Court is not left with a definite and firm conviction that a mistake has been made.

Not only was the Bankruptcy Judge correct that Debtor's across the board late payments was unusual, there were also the facts that the Debtor sent the Growers a letter indicating that they would be paid late due to his financial circumstances, a meeting with the Growers where he discussed these problems, and

the 1% interest payment. All of these facts point to a conclusion that the transaction at issue was unusual.

Appellant asks the Court to look at Debtor's past transaction history with all Growers, in which several were sometimes paid late, and then apply it just to him. The Bankruptcy Judge looked at all of the past history and applied it to all the Growers, as in that case there were eight Growers as parties and not only Appellant Rothert. However, if Appellant Rothert wishes an individual review, and believes that there is not sufficient credit history between himself and Debtor to establish an ordinary course of business, then the Court must look at his express agreement with Debtor.[7] *In re Globe Mfg.*, 567 F.3d at 1298 ("Where parties have no extensive history of credit transactions to which a disputed payment can be related, their express agreement furnishes the most informative evidence left to consider of the ordinariness of a transaction from the parties' perspective."). Here, the parties' agreement stated that if Appellant priced his seed beans on or before the first of May, payment was to be made within seven days after the first Monday in May; if the seed beans were priced after the first of May, then payment would be made within ten business days after the price was established. (Doc. 5 at 10). Appellant had priced most of his beans prior to May 1, 2003. (Doc. 5 at 13). However, he was not paid until June 9, 2003, and June 26, 2003, which was outside of their express agreement. (Doc. 5 at 13). Accordingly, even upon such an examination, the

---

[7] Alternatively, if four years of credit history is sufficient to establish a baseline of interactions between the parties, Appellant had never previously been paid late; nor had he ever previously received a 1% interest payment. *In re Patriot,* 2010 WL 381620, at *17.

Bankruptcy Court's conclusion that the payment was unusual would not be clearly erroneous.[8]

## 2. Absence of Creditor Pressure and Assistance with Debtor's Ongoing Business

Appellant next argues that the Bankruptcy Court erred as a matter of law when it took into consideration the preferential intent of the Debtor in order to counterbalance the absence of pressure from Appellant or any other Defendant Growers. (Doc. 5 at 30-31) According to Appellant, whether the Debtor intended to prefer a given creditor is irrelevant; all that matters is whether Appellant put pressure on Debtor to make the unusual payments.

With respect to the weight to be given to the intent of the creditors as opposed to the intent of the Debtor, the Court finds the Seventh Circuit case of *Matter of Milwaukee Cheese Wisconsin, Inc.*, 112 F.3d 845 (7th Cir. 1997) to be especially illuminating. In that case, Milwaukee Cheese repaid all of its employees money owed to them from their thrift savings accounts when it was on the brink of bankruptcy. *Id.* at 845. After finding that these payments were unusual, the Seventh Circuit considered the impact of the employees' perception of the payments they received. *Id.* at 848. Assuming that the employees were not aware of the unusual nature of the transactions at issue, the Seventh Circuit held that "[§] 547(c)(2)(B) is not satisfied just because each creditor perceives the payment to be justified. . . . Even if these transactions were ordinary from the transferees' perspectives . . . , they must be ordinary from the debtor's perspective too." *Id.*

---

[8] The Bankruptcy Judge also considered this argument and found that the payments were not made within the confines of the parties' contracts. *In re Patriot*, 2010 WL 381620, at *15.

Accordingly, the Court cannot find that the Bankruptcy Judge erred when he determined that despite the fact that none of the Defendant Growers (including Appellant) placed any pressure on Debtor, the evidence that the Debtor desired to prefer the Appellant over other unsecured creditors counterbalanced this fact.

However, Appellant argues, that *Matter of Milwaukee Cheese* is not on point with the present case because there the payments to employees had nothing to do with promoting the debtor's ongoing business, whereas here the payments Debtor made to Appellant and the other Growers were made in order to sustain Debtor's business. (Doc. 11 at 11-12). This argument appears to be tied in with Appellant's final argument as to §547(c)(2)(B), that the deferred payments were made pursuant to a type of "workout agreement" allowing for the Debtor to continue its business. (Doc. 5 at 34-35; 11 at 14-15). Appellant has cited *In re Metromedia Fiber Network, Inc.*, 2005 WL 3789133 (Bankr. S.D.N.Y. 2005) to support his argument restructuring agreements should not be excluded from falling within the realm of the ordinary course of business defense. In that case, the Bankruptcy Court for the Southern District of New York held that it would not apply a *per se* rule that late payments of on antecedent debts pursuant to a restructuring agreement fell outside of the ordinary course of business exception, even if it was the first such interaction between the parties. *Id.* at *8.

The Bankruptcy Judge did not dispute this argument, but instead found that the relevant payments here were not made pursuant a restructuring agreement. *In re Patriot*, 2010 WL 381620, at *16. This was a finding of fact which this Court cannot reverse unless clearly erroneous. *See Anderson v. City of Bessemer City,*

*N.C.*, 470 U.S. 564, 573 (1985). The Bankruptcy Judge found that there was no restructuring agreement here because 1) the deferral was not the product of negotiations between the parties but rather a unilateral offer made by Debtor; 2) instead of reducing the amount of debt owed, the deferral increased it by adding a 1% interest late fee; and 3) there was no evidence that Debtor restructured its debt with respect to anyone other than the Growers. *In re Patriot*, 2010 WL 381620, at *16. Based upon the evidence in the Record, the Court is not left with a definite and firm conviction that this decision was a mistake. The facts that no similar offers were given to other creditors, and that the Growers received a 1% interest payment (which Appellant does not dispute was preferential) indicate that Debtor intended to prefer the Growers over other creditors, even if it also had the effect of allowing it to continue its business activities for the time being.

Taking into account all of these factors, the Court cannot conclude that the Bankruptcy Judge made a mistake when he found that the June 2003 payments were not made in the ordinary course of Debtor's business with Appellant, and therefore the Bankruptcy Court's decision must be affirmed

### B. § 547(c)(2)(C): Ordinary Business Terms

Even if Appellant had succeeded in his proof under §547(c)(2)(B) (which he has not), he would still have to fulfill the requirements of §547(c)(2)(C). That is, in addition to proving that the June 2003 payments were not unusual as compared to the previous interactions between Appellant and Debtor, Appellant also has the burden of proof to show that the payments were made "according to ordinary business terms." § 547(c)(2)(C). To do this, Appellant must 1) define the relevant

industry; 2) establish the practices of that industry; and 3) establish that the June 2003 payments fall within the normal course of business in that industry. *See In re NETtel Corp.,* 364 B.R. 433, 453 (Bankr. D. Colo. 2006). The Bankruptcy Judge found that Appellant failed to meet his burden of proof with respect to defining the relevant industry, and therefore could not qualify for the ordinary course of business exception. *In re Patriot*, 2010 WL 381620, at *21-22 ("Defendants have failed to submit sufficient evidence for this Court to determine and define the relevant industry to be used for comparison in this case. Without a defined industry, the Court cannot ascertain a standard to be followed.").

Several courts have considered the proper method to use in defining the relevant industry. For instance, in *Tolona Pizza*, the Seventh Circuit stated that it must look at "firms similar in some general way to the creditor in question." 3 F.3d at 1033. The Fifth Circuit has suggested that the creditor "provide evidence of credit arrangements of other debtors and creditors in a similar market, preferably both geographic and product." *In re Gulf City Seafoods, Inc.*, 296 F.3d 363, 369 (5th Cir. 2002). In the case of small markets, the Fifth Circuit stated that a creditor may show evidence of "other local industries with similar characteristics." *Id.* at 369 n. 8. Other courts have emphasized that the relevant industry is typically made up of the creditor's competitors. *See In re marchFIRST, Inc.*, 381 B.R. 689, 697 (Bankr. N.D. Ill. 2008); *In re Crystal Medical Prods., Inc.*, 240 B.R. 290, 294 (Bankr. N.D. Ill. 1999). However, as Appellant points out, when there is no clear creditor market available, courts also look at the prevailing practices of the debtor's industry. *In re Accessair, Inc.*, 314 B.R. 386, 394 (8th Cir. B.A.P. 2004).

At trial, Appellant attempted to define the relevant industry as "farm supplies wholesale," which is Debtor's industry, because it could find no standard business terms within the Grower's industry (i.e., the seed production industry). *In re Patriot*, 2010 WL 381620, at *19; (R. at 362).[9] The "farm supplies wholesale" industry which Appellant's expert testified to contained 878 entities with year ends falling between April 2003 and March 2004. (R. at 306). This category included large corporations such as Growmark, which sells fertilizer, fuel, and farm chemicals, and Farm King, which sells everything from hunting equipment to hiking boots. *Id.* at *20; (R. at 313). Appellant's expert described the group as "farm supplies merchant wholesalers" who had "the same customer base, farmers who need supplies, in this case." (R. at 313). This was the only evidence put on by Appellant as to the relevant industry because, he argued, there was no "industry standard" for seed bean growers. (R. at 362).

As previously mentioned, the Bankruptcy Judge rejected Appellant's proffered industry upon a finding that it was "much too broad to inform the Court on the range of standard practices in the more limited universe of the seed or grain production industry." *In re Patriot*, 1010 WL 381620, at * 21. This was a finding of fact which the Bankruptcy Court made based upon the record before it, and nothing in the record indicates to this Court that it was a clear error. Appellant now argues

---

[9] Appellant also tried to draw a comparison to the grain elevator industry, which the Bankruptcy Court rejected this option because Appellant did not introduce evidence of standard practices in the grain elevator industry, and did not establish that the relevant preferential payments were made in accordance with ordinary business terms in the elevator grain industry. *In re Patriot*, 2010 WL 381620 at *23-24. Appellant is not appealing this finding, and so the Court need not discuss the applicability of the grain elevator industry.

that this was in error because "there is nothing in the Record suggesting that any such data exists anywhere." (Doc. 5 at 37). While Appellant may be correct that there is no data on the record indicating standards for the relevant industry, he fails to recognize that it was his burden to produce such evidence. Further, if he was unable to uncover such evidence, the law dictates that he could have "shown credit arrangements in other local industries with similar characteristics." *See Gulf City Seafoods*, 296 F.3d at 369 n.8. However, Appellant did not attempt to do so, and it was not erroneous for the Bankruptcy Court to determine that he therefore failed to meet his burden of proof.[10] Accordingly, Appellant failed to meet the requirements of § 547(c)(2)(C), and the decision of the Bankruptcy Court to this effect must be AFFIRMED.

## C. Prior Written Statements of Trustee's Counsel

Next, Appellant makes a brief argument that the Bankruptcy Judge erred because he did not consider a previous statement by Debtor's counsel, Barry Barash, to the effect that the payments at issue were not a preference. (Doc. 5 at 43-44). In the Debtor's proposed Combined Chapter 11 Plan of Reorganization and Disclosure Statement, Barash stated that it was more probable than not that the bankruptcy court would not find the payments to the Growers to be avoidable preferences. *In re Patriot*, 2010 WL 381620, at *24.

---

[10] In its Brief, Appellant now argues that there was evidence on the record from two of Debtor's Growers indicating their credit arrangements with other customers. (Doc. 5 at 40). However, Appellant did not make such an argument before the Bankruptcy Court, thereby waiving the issue on appeal. *In re Bear*, 789 F.2d 577, 579 (7th Cir. 1986).

At trial, Appellant asked the Bankruptcy Judge to consider this statement as a judicial admission, and to consider its effect in determining whether the June 2003 payments fell within the ordinary course of business exception. *Id.* The Bankruptcy Judge considered the argument, but found that Barash's statement "does not constitute a judicial admission in these adversary proceedings." *Id.* at *25. He made this determination because 1) the statement was made while the bankruptcy case was a Chapter 11 proceeding as part of Debtor's disclosure statement, and not after the case had been converted to Chapter 7 or as part of these proceedings; 2) at the time he made the statement the issue of preferential payments had not yet been framed or tried; 3) the admission would be to the detriment of Debtor's creditors, and not the Debtor; and 4) the statement did not involve a fact, but only a preliminary opinion of how a bankruptcy court may rule. *Id.*

Appellant concedes that the determination of whether to construe previous statements by counsel as judicial admissions is within the discretion of the Court. (Doc. 5 at 44-45 *citing Garamendi v. SDI Vendome S.A.,* 276 F.Supp.2d 1030, n.5 (C.D. Cal 2003)). Accordingly, the Court does not find that the Bankruptcy Judge committed error in declining to construe Barash's statement as a judicial admission. Especially relevant are the facts that Barash's statement was not made to the Bankruptcy Judge as part of these proceedings, and that his earlier opinion would not be to the detriment of the Debtor, who stands nothing to gain now that this is a Chapter 7 proceeding rather than Chapter 11, but to the Debtor's other creditors.

Accordingly, it was within the Bankruptcy Judge's discretion to not construe this as a judicial admission which would be binding upon the Trustee in these proceedings.

## II. Pre-Judgment Interest

Finally, Appellant Rothert appeals the Bankruptcy Court's decision to award prejudgment interest at a rate of 4.43% from the date of the filing of the Trustee's Complaint against him in this matter. Appellant Rothert acknowledges that the awarding of prejudgment interest is within the discretion of a bankruptcy court, but argues that relevant to that determination is whether "the preferred creditor could have ascertained the amount of preferential payment without a judicial determination," which he argues he could not have done here. (Doc. 5 at 45-46 *quoting In re Bellanca Aircraft Corp.*, 850 F.2d 1275, 1281 (8th Cir. 1988)). However, as the Seventh Circuit has explained, the reason for the awarding of prejudgment interest is not to punish the preferred creditor, but to make the debtor's estate whole by providing it with the time value of its money. *See Matter of Milwaukee Cheese*, 112 F.3d at 849. Accordingly, regardless of whether Appellant knew or should have known that the payments he received in June of 2003 were preferential, the Bankruptcy Court has determined that they were, and therefore Debtor's estate must be made whole. *See id.* ("Discretion is not . . . authorization to determine who deserves the money more."). Therefore it was not erroneous for the Bankruptcy Court to award prejudgment interest at the prime rate for the years in question, and its decision to do so is AFFIRMED.

### III. Bill of Costs

There is one other procedural matter the Court must address before concluding. Appellee has submitted a Motion for Bill of Costs (Doc. 8) and an Amended Motion for Bill of Costs (Doc. 9) to this Court. To the extent that the Amended Motion replaces the original Motion, Appellee's Motion for Bill of Costs (Doc. 8) is rendered MOOT. With regards to Appellee's Amended Motion, Federal Rule of Bankruptcy Procedure 7054 provides that the Court may allow costs to the prevailing party. However, "[i]n order to award costs to a prevailing party, the court must determine that the expenses are allowable cost items and that the amounts are reasonable and necessary." *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 642 (7th Cir. 1991). Because the Amended Bill of Costs deals with costs incurred in the underlying Bankruptcy Court proceedings, this Motion is REMANDED to Bankruptcy Judge Altenberger to determine that the costs claimed are both reasonable and necessary.

### CONCLUSION

For the foregoing reasons, the decision of the Bankruptcy Court is AFFIRMED. Appellee's Motion for Bill of Costs (Doc. 8) is MOOT, and Appellee's Amended Motion for Bill of Costs (Doc. 9) is REMANDED to Bankruptcy Judge Altenberger for a determination of the claimed costs' reasonableness and necessity. IT IS SO ORDERED.

Entered this <u>31st</u> day of March, 2011.

s/ Joe B. McDade
_____
JOE BILLY McDADE
United States Senior District Judge
